IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| KEVIN D. BURTCHETT, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 6:11-cv-03148-DGK |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER DENYING MOTION FOR POSTCONVICTION RELIEF AND CERTIFICATE OF APPEALABILITY

This motion arises out of Movant Kevin Burtchett's conviction for possession of a short-barreled rifle in violation of 26 U.S.C. § 5871(d). Burtchett pled guilty pursuant to a written plea agreement and is currently serving a sentence of 30 months imprisonment.

Pending before the Court is Burtchett's *pro se* "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence" (Doc. 1). Burtchett asserts six ineffective assistance of counsel claims and six prosecutorial misconduct claims. Finding no merit to these allegations, the Court holds an evidentiary hearing is unnecessary, denies the motion, and declines to issue a certificate of appealability.

### BACKGROUND

On October 22, 2008, a grand jury charged Movant Kevin Burtchett in a three count indictment. On October 29, 2009, Movant Kevin Burtchett pled guilty pursuant to a plea agreement to Count 2, possession of a short-barreled rifle in violation of 26 U.S.C. 5871(d). In exchange, the Government dismissed Counts 1 and 3.

The factual basis for the guilty plea is set forth in the plea agreement. It states,

> On July 10, 2008, Missouri State Highway Patrol troopers
> and COMET Drug Task Force officers executed a search warrant

at 4109 E. Eastmoor, Springfield, Missouri, at the defendant's [Burtchett's] house. The defendant and his girlfriend were at the house when officers arrived. The search revealed an indoor hydroponic growing operation with approximately 24 marijuana plants, approximately 7.5 pounds of processed marijuana, mushroom spores, $5,100.00 in U.S. currency, and fifty firearms.

The defendant's indoor marijuana growing operation was found in the southeast area of the basement. Within this area, there was a room with plants about eighteen inches tall and a room with plants about four feet tall. The growing operation was equipped with heat lamps, reflective mylar, plastic sheets, water, nutrients, and chemicals. In a storage room, next to the grow area, officers found vacuum storage units with bags, twelve mason jars containing marijuana, sixteen jars of mushroom spores, and a five-gallon bucket containing marijuana.

Drugs and firearms were also found in the southwest area of the basement. In another basement room, there were three large gun safes, a metal gun case, and a small safe. The defendant said that he was storing two of the large gun safes for Darrell Parker and did not have the keys or combination. The defendant opened his large gun safe, which held seven guns, $5,100.00 in U.S. currency, and a black case containing several bundles of marijuana and a drug ledger. One of the guns in the defendant's large safe was a Colt, Match Target Competition, HBAR II rifle, with a nine and one-half inch barrel. Officers found three rifles in the metal gun case.

When the defendant's bedroom was searched, officers found processed marijuana, drug paraphernalia, hash, and mushroom spores. Officers observed a "dry" room in the bathroom, which contained a suspected drying machine, dry bags, grow supplies, and a five-gallon bucket containing marijuana leaves.

During the search, the defendant was asked if he had other weapons in the house. The defendant said that he had a pistol in his computer bag in his car that was parked in the garage. An officer located a semi-automatic handgun in the location described by the defendant.

COMET Drug Task Force Officer Dean Adams placed the defendant under arrest and read the *Miranda* rights to him. During an interview, the defendant admitted to possessing and cultivating marijuana for personal use. The defendant estimated that he currently had 24 plants growing and had four to five pounds of marijuana in his safe.

> Later that evening, officers executed a search warrant at Parker's residence in Rogersville, Missouri. The two remaining large safes were opened by Parker and were found to contain thirty-nine guns, drug paraphernalia, and a small bundle of marijuana.
>
> On July 14, 2008, the defendant contacted Sergeant Matthew Funderburk at the MSHP Troop D Headquarters to give a statement. After reading the *Miranda* rights and signing a waiver of rights, the defendant gave a written statement about the marijuana found in Parker's gun safe and claimed ownership of the marijuana. The defendant stated that he had been growing marijuana for several years or cycles, and that the seized plants were four weeks old.
>
> On July 25, 2008, ATF Special Agent James Patterson and Task Force Officer Rob Vaughan interviewed the defendant at the MSHP Troop D Headquarters. After being read the *Miranda* rights, the defendant stated that he understood his rights and agreed to an interview. The defendant admitted ownership of one of the three gun safes at his house. Of the fifty firearms seized, the defendant said that he owned ten guns, one gun belonged to his father, and the remaining guns belonged to Parker.
>
> The defendant said that he purchased the Colt, HBAR II, rifle from a gun shop in 2001 or 2002, and in 2007, he bought the shorter barrel and upper receiver assembly at the Ozark Empire Fairgrounds. The defendant admitted that he changed the barrel himself, had never possessed a federal firearms license, and had never attempted to register the Colt as a short-barreled rifle.
>
> ATF Special Agent Dan Fridley examined the Colt rifle, Match Target Competition, HBAR II, serial number CJC016677. He determined that the rifle was not manufactured in the state of Missouri, so it traveled there in interstate commerce. ATF Task Force Officer Rob Vaughan examined and test fired the firearm and found that it functioned as designed.

Plea Agrmt. (Doc. 42 in case no. 6:08-cr-03118-DGK), at ¶3.

As part of the plea agreement, Burtchett agreed to waive his appellate and post-conviction rights, except the right to attack his conviction on grounds of ineffective assistance of counsel or prosecutorial misconduct. *Id.* at ¶15.

On April 19, 2010, this Court sentenced Burtchett to 30 months imprisonment to be followed by three years supervised release.

On April 18, 2011, Burtchett timely filed the present motion to vacate his sentence and conviction under 28 U.S.C. § 2255.

**DISCUSSION**

Burtchett asserts two general grounds for relief in this habeas petition. First, that his attorney provided ineffective assistance of counsel; and second that he is the victim of "prosecutorial misconduct." Neither of these claims has any merit.

**A.    Burtchett did not receive ineffective assistance of counsel.**

Burtchett contends his attorney provided ineffective assistance of counsel by (1) being unprepared for his suppression hearing; (2) failing to object at the suppression hearing to admission of an eleven page list of evidence seized; (3) failing to file any discovery motions; (4) failing to assert a *Franks* violation[1] in support of his motion to suppress; (5) failing to effectively negotiate a plea agreement; and (6) failing to object, challenge, or investigate what Burtchett's contends is prosecutorial misconduct.

To succeed on a claim of ineffective assistance of counsel, a movant must show that "(1) trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney, and (2) trial counsel's deficient performance prejudiced the defense." *Armstrong v. Kemna*, 534 F.3d 857, 863 (8th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984)). Thus, the analysis contains two prongs, a performance prong and a prejudice prong. *See Lawrence v.*

---

[1] A *Franks* violation asserts that evidence seized pursuant to a search warrant should be suppressed because the affiant of a search warrant made a false statement to the court either intentionally and knowingly or with reckless disregard for the truth, and the false statement was necessary to the finding of probable cause. It takes its name from *Franks v. Delaware*, 438 U.S. 154 (1978).

4

*Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992). Failure to satisfy either prong is fatal to the claim. *See Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997).

Judicial review of trial counsel's performance is highly deferential, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Middleton v. Roper*, 455 F.3d 838, 846 (8th Cir. 2006). Trial counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Strategic choices made in the shadow of a lack of preparation or investigation, however, are not protected by the same presumption. *Armstrong*, 534 F.3d at 864.

Concerning the prejudice prong, the movant must show that the outcome of the proceeding would have been different but for counsel's error. *Williams v. Taylor*, 529 U.S. 362, 391-93 (2000). Where the movant pled guilty at the trial level, to satisfy the prejudice prong the movant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A court may examine the "prejudice" prong of a claim first without determining whether the representation fell below the objective standard of reasonableness. *McCann v. Armontrout*, 973 F.2d 655, 660 (8th Cir. 1992). If the movant cannot demonstrate prejudice, then the Court need not consider the reasonableness of counsel's performance. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

### 1. Counsel was not ineffective during the suppression hearing.

In the present case, there is no evidence that Burtchett's attorney was ineffective. With respect to Burtchett's first two arguments, the Court finds counsel was prepared for the suppression hearing and focused on the relevant issue, namely whether the application for the search warrant and supporting affidavit provided probable cause for the reviewing magistrate to

grant the request. Although Movant complains that his attorney did not ask enough questions, there was no need for counsel to conduct any cross-examination of Sgt. Funderburk, much less a lengthy cross-examination. Asking more questions would only have given Sgt. Funderburk an opportunity to discuss in detail the staggering amount of incriminating evidence seized. Counsel's strategy here was to focus on the legal sufficiency of the application and affidavit, not the facts of the actual search.

Counsel was also not deficient for failing to object to admission of Government's Exhibit B, an eleven page list of seized evidence. There was no basis to object to its admission, and stipulating to its admissibility did not waive Burtchett's right to contest the legality of the searches or otherwise prejudice him. Additionally, objecting to the list's admission might have backfired: by forcing the government to introduce each piece of evidence individually, it would have emphasized the volume of evidence. Accordingly, the Court holds counsel's performance during the suppression hearing was based on sound strategy and his performance was not deficient.

### 2. Burtchett cannot establish prejudice for counsel's failure to file discovery motions or assert *Franks* violations.

Burtchett's third and fourth ineffective assistance of counsel arguments fail because he cannot establish that his attorney's failure to file any discovery motions or assert *Franks* violations prejudiced him. Burtchett has not shown, or even alleged, how filing any discovery motions or asserting a *Franks* violation would have resulted in a different outcome here, that is, resulted in his deciding to exercise his right to trial rather than plead guilty. Based on the existing record, the Court finds that had defense counsel filed these motions, the Court would have denied them and then Burtchett would have pled guilty by agreement to avoid a longer sentence. Consequently, the Court holds Burtchett has not established prejudice.

### 3. Counsel was not ineffective in negotiating his plea agreement.

In his fifth argument, Burchett argues his attorney was not diligent in negotiating his plea agreement. Burchett makes a range of allegations here. He contends his attorney waited too long before beginning to negotiate a plea agreement, settled for a "boiler plate" plea agreement so he (counsel) would not anger the Government, and made a "misleading statement about the plea agreement." Burchett also maintains that but for counsel's improper advice, he would have gone to trial.

The Court finds no merit to these allegations. There is no evidence that counsel waited too long before beginning plea negotiations. On the contrary, if counsel had started negotiating earlier, before litigating the motion to suppress, he may have appeared too eager to settle, thereby losing negotiating power, and Burchett might now be complaining that he could have gotten a better deal if his attorney had started negotiating later. There is also no evidence that the use of any "boiler plate" language in the agreement prejudiced Burtchett.

Although devoid of merit, these first two allegations are nonetheless noteworthy because they explain what Burtchett's true complaint is here: that he did not get a better deal. Movant's speculation that he might have gotten a better deal, however, is not grounds to grant his § 2255 petition. Because he pled guilty at the trial level, Burtchett must prove "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). He has not, thus the Court cannot grant his petition.

The Court also finds no merit to Burchett's claim that his attorney made an unspecified "misleading statement" to him about the plea agreement, and that but for this advice, he would have gone to trial. Burchett states no facts in support of this claim; it is purely conclusory. He has not stated what counsel said or when counsel said it to him. Although the court construes

7

*pro se* pleadings liberally, this principle will not save a wholly conclusory allegation in a § 2255 motion from summary dismissal. *See Fischer v. United States*, No. 4:09-CV-1783 CAS, 2010 WL 3719934, at *8 (E.D. Mo. Sept. 13, 2010). Burtchett's assertion is also inconsistent with the extensive plea colloquy held on the record during his change of plea hearing. If counsel had made any misleading statement to Burchett about the terms of the agreement or what rights he was waiving under the agreement, the statement would almost certainly have come to light during the hearing.

The Court observes that far from being ineffective, Burtchett's attorney negotiated a good outcome for him here. The plea agreement resulted in dismissal of two of the three counts against him, a binding promise from the Government not to bring additional charges against him, and an agreement that the Government would not move for an upward departure from the Sentencing Guidelines. Given the mass of evidence against Burtchett, including multiple confessions and corroborating evidence of weapons, drugs, and money, this was a good result. Accordingly, this portion of the motion is denied.

**4.  Counsel was not ineffective for failing to object to any alleged prosecutorial misconduct.**

Finally, Burchett claims his attorney failed to object, challenge, or investigate several instances of what he describes as "prosecutorial misconduct." As discussed below, there was no prosecutorial misconduct, thus counsel was not ineffective for failing to allege that there was.

**B.  There was no prosecutorial misconduct.**

In his second general ground for relief, Burtchett makes six allegations of what he considers to be prosecutorial misconduct. Specifically, Burtchett alleges (1) the Government withheld exculpatory evidence; (2) Sgt. Funderburk and Officer Adams threatened and coerced him and his girlfriend into being interviewed while they were under the influence of marijuana;

(3) Sgt. Funderburk coerced him into making a second incriminating statement; (4) Sgt. Funderburk made false statements in the affidavit he submitted in support of the search warrant; and (5) Sgt. Funderburk made misleading and false statements to the magistrate judge presiding over his suppression hearing.

As the Government notes, Burtchett, misunderstands prosecutorial misconduct. The elements of a prosecutorial misconduct claim are (1) the evidence must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the Government; and (3) the evidence must be prejudicial. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Only the first of Burtchett's allegations asserts what could be described as prosecutorial misconduct; the remaining allegations assert *Miranda* and *Franks* violations which Burtchett waived by pleading guilty.

1.      **There is no merit to the withheld exculpatory evidence claim.**

Burtchett's first claim is that the Government withheld exculpatory evidence from him, evidence he contends calls into question whether he owned 39 firearms found in two safes at his residence. Burtchett maintains there are two different accounts of how investigators inventoried the firearms found in the safes, and that the search warrant inventory was not disclosed by the Government to him. Burtchett contends that by attributing these firearms to him, the Government increased his base offense level under the Sentencing Guidelines by six points.

There is no merit to this argument. The plea agreement, which Burchett signed and acknowledged on the record in open court, explains the recovery and disposition of all firearms attributable to him. Plea Agrmt., at ¶3-4. But even if Burtchett were now allowed to dispute disposition of these firearms, he does not explain how the inventory list would be exculpatory to him. Burtchett pled guilty to possession of a short-barreled rifle which was found in a third safe, a charge which is unrelated to ownership of the 39 guns found in the first two safes.

Accordingly, the search warrant inventory form was not exculpatory, so there can be no prosecutorial misconduct.

Accordingly, this portion of the motion is denied.

### 2. Burtchett waived his remaining claims by pleading guilty.

Of the remaining four claims, the first two—that officers threatened and coerced Burtchett and his girlfriend into being interviewed while they were under the influence of marijuana, and then later coerced Burtchett into making a second incriminating statement—allege *Miranda* violations. The last two—that Sgt. Funderburk made false statements in the affidavit submitted in support of the search warrant and made misleading statements to the magistrate judge during the suppression hearing—allege *Franks* violations. All of these claims are attacks on his conviction which Burtchett waived in his plea agreement. Even if the plea agreement did not bar Burtchett from raising these claims, he could not raise them because an unconditional guilty plea precludes a petitioner from challenging the constitutionality of a search and seizure, *Johnson v. Petrovsky*, 626 F.2d 72, 73 (8th Cir. 1980), or his interrogation, *United States v. Wilkins*, 158 Fed. Appx. 141, 143 (10th Cir. 2005). These claims are denied.

## C. No evidentiary hearing is required.

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id.* (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)); *see also Sanders v. United States*, 347 F.3d 720, 721 (8th Cir. 2003) (holding a § 2255 motion may be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle him to relief, or (2) the allegations

cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact). In the present case, Burtchett's claims are meritless on their face. Consequently, no evidentiary hearing will be held.

**D.     No certificate of appealability should be issued.**

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). District courts customarily address this issue contemporaneously with the order on the motion. *See Pulliam v. United States*, No. 10-3449-CV-S-ODS, 2011 WL 6339840, at *4 (W.D. Mo. Dec. 16, 2011).

A certificate of appealability should be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires the movant to demonstrate "that reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 464 U.S. 800, 893 n.4 (1983)). No reasonable jurist could grant this § 2255 motion, and so the Court will not issue a certificate of appealability.

## Conclusion

For the reasons discussed above, the motion (Doc. 1) is DENIED and the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Date:   July 3, 2012                                  /s/ Greg Kays
                                                      GREG KAYS, JUDGE
                                                      UNITED STATES DISTRICT COURT